IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 07-cv-00608-RPM-MJW

ROSEMARY DRISCOLL,

    Plaintiff,

v.

ERIC A.M. DENNIS,
CLARK C. GRIFFITH and
LAW OFFICE OF CLARK C. GRIFFITH,
A Minnesota Professional Association,

    Defendants.

_____

FINDINGS, CONCLUSIONS AND ORDER
_____

Rosemary Driscoll claims that the defendants Eric A.M. Dennis, Clark C. Griffith and Mr. Griffith's law office[1] are liable for the conversion of 250,000 shares of the common stock of Lifeline Therapeutics, Inc., a Colorado Corporation, owned by her. She has related claims for negligence and breach of fiduciary duty against Clark Griffith for releasing her stock from escrow when no purchase had been made. These claims fail because Ms. Driscoll has failed to prove her ownership of the shares in dispute.

Rosemary Driscoll was married to William Driscoll, now deceased. Mr. Driscoll's testimony was given in a preservation deposition taken on December 22, 2009. He was the CEO and president of Lifeline Therapeutics until July 1, 2005. At that time he owned several million shares of unregistered common stock in the company. Mr.

---

[1] There is no showing that the named defendant Law Office of Clark C. Griffith is a suable entity.

Driscoll said that he had distributed shares among members of his family, including one million shares to Rosemary. He also said that he controlled the family's financial resources. Mr. Driscoll considered shares of stock to be as fungible as currency (depo. p. 59) and spoke repeatedly of beneficial ownership of shares without reference to stock certificates.

In the summer of 2005, the price of the publicly traded common stock of the company was falling rapidly. Recognizing that he was an affiliate of the company under the Securities Act, because of his positions as executive officer and because of his percentage of ownership of outstanding shares, Mr. Driscoll wanted to sell stock to obtain about $1,000,000. He learned that Eric Dennis was a person who bought restricted stock at a discount from the public market price. Mr. Driscoll contacted Mr. Dennis and did a transaction for the sale of 40,000 shares with an expectation of arranging a larger sale.

Those 40,000 restricted shares were purchased by a family trust established by Clark Griffith for his grandchildren and ultimately resulted in a large loss because of the rapidly falling market price for the stock.

William Driscoll and Eric Dennis communicated by e-mail and telephone, negotiating for the sale of more of William Driscoll's stock. Eric Dennis was also negotiating with Christopher Micklatcher, a CPA and tax attorney in Dustin, Michigan, for the sale of some of his Lifeline stock, acquired when he was a director and treasurer of the company. He resigned before July, 2005, and it was expected that the restriction on his shares would expire in late October, 2005, making them publicly marketable.

There is conflicting and vague testimony from Christopher Micklatcher, William Driscoll, Eric Dennis and Clark Griffith as to agreements among them.  It is clear that their discussions concerned methods by which the Driscoll shares could be freed from restriction under SEC Rule 144 before the expiration of the waiting period required for him as a former officer and large stockholder in the company.  Mr. Micklatcher testified that Mr. Dennis devised a plan to have Mr. Micklatcher borrow 250,000 shares of Driscoll stock to sell them with 100,000 shares of Micklatcher stock to Eric Dennis who could tack on Micklatcher's holding period expiring in October, 2005.

The controlling facts in the case are the instructions given to the transfer agent for Lifeline and the resulting cancellation and reissue of stock certificates.  Stock certificates are the normal means of permitting a Colorado corporation to comply with the statutory obligation to maintain a record of the names and addresses of its shareholders and the number of shares owned in C.R.S. § 7-116-101.[2]

On August 18, 2005, the transfer agent recorded receipt of certificate no. 1125 for 100,000 shares in the name of William Driscoll, no. 890 for 50,000 shares in the name of Christopher Micklatcher, no. 891 for 50,000 shares in the name of Christopher Micklatcher and no. 892 in the names of Christopher Micklatcher and Nancy Micklatcher for 406,142 shares and recorded the issuance of certificates no. 1133 for 40,000 shares to Bank of America and Clark C. Griffith, no. 1134 for 60,000 shares to William J. Driscoll, no. 1135 to Eric A. M. Dennis for 350,000 shares and no. 1136 to Christopher Micklatcher and Nancy M. Micklatcher for 156,142 shares.  Ex. 23.

---

[2]This statute was not cited by counsel but the Court takes judicial notice of it.

On August 2, 2005, Christopher Micklatcher sent a facsimile letter to the transfer agent, saying:

> Please find enclosed a copy of the original stock power for Nancy Micklatcher. This stock power is to be used in conjunction with mine to transfer 250,000 shares to Eric Dennis or his assignee.
>
> ***
>
> I ask that you allow Eric to place 250,000 shares from my stock cert No. 892 in whatever name he proposes. The original stock power will arrive tomorrow.

Exhibit W.

On the same date, Christopher Micklatcher sent a facsimile letter to the transfer agent, including the following paragraphs:

> 1. I am transferring 250,000 shares to Eric Dennis or his assignee. The stock certificate, a copy of which is attached, is being overnighted to you by Merrill Lynch and should be there this morning. My contact at Merrill Lynch is Christine Eakins and her phone number is 720-941-2005.
>
> 2. The shares are jointly held by myself and my wife. I overnighted you two stock powers last week to handle both this transaction and the other 100,000 shares that are solely in my name and will likewise be transferred to Eric Dennis or his assignee. (There are two deals here, one for 100,000 shares and one for 250,000 shares).
>
> 3. A stock power will be overnighted to you today by Nancy Micklatcher. I will be meeting her at a local bank, and we'll get it signed. When I overnight it I will let you know the FedEx number so you can track it, and also fax you a copy of it.
>
> 4. In return, I will be receiving 300,000 shares from William Driscoll. Thee shares are to be put in the name of Christopher Micklatcher & Nancy Micklatcher, Joint Tenants.
>
> 5. Once the new certificate is prepared for 300,000 shares I ask that you mail it back to me. In addition, of the attached

>    certificate (No. 892) only 250,000 shares are being
>    transferred to Eric Dennis or his assignee so I ask the
>    remaining shares 156,142 shares) also be placed in the
>    name of Christopher Micklatcher & Nancy Micklatcher, Joint
>    Tenants, and mailed back to me.
>
> 6. I would like to get two separate certificates back even though
>    they are all held jointly with my wife. One for 300,000 shares
>    from Bill Driscoll and one for 156,142 shares which is left
>    over form certificate No. 892.
>
> 7. You will be contacted by Eric Dennis this morning with
>    further instructions on the how to place the name on the
>    stock certificates.

Exhibit 10

There is no evidence that a certificate for 300,000 shares referred to in paragraph 6 was issued.

Stock certificates nos. 890 and 891 to Christopher Micklatcher and no. 892 to Christopher Micklatcher and Nancy Micklatcher, joint tenants, bear an issue date of June 20, 2005, and stock certificate no. 1125 to William J. Driscoll bears the issue date of July 14, 2005. Ex. W3.

Certificate no. 1135 went to Clark C. Griffith, who acknowledged receipt by letter to Christopher Micklatcher, saying:

> By this letter I acknowledge receipt of stock certificate number 1135
> in the amount of 350,000 Shares of Lifeline Therapeutics, Inc. By your
> authorization the certificate is issued in the name of Eric A.M. Dennis.
> The stock certificate will be in safe keeping at my office until I receive
> further instructions with respect to its disposition.

Exhibit 17

On November 9, 2005, the transfer agent cancelled certificate no. 1135 in the name of Eric A.M. Dennis for 350,000 shares and issued certificate no. 1157 for 3,000

shares to Eric A.M. Dennis, no. 1158 for 217,000 shares to Eric A.M. Dennis and certificate no. 1159 for 130,000 shares to Clark C. Griffith.  Ex. 27.

Mr. Dennis and Mr. Griffith then transferred those certificates to Penson Financial Services who obtained certificates nos. 1163, 1164 and 1165, without restriction on November 18, 2005.  Exs. 28, 29 and 30.  Mr. Dennis and Mr. Griffith took the proceeds for their own uses.

There is an extensive evidentiary record of communications between and among Christopher Micklatcher, William Driscoll and Eric Dennis concerning the price for the sale of restricted shares of Lifeline stock between August, 2005, and April, 2006. Christopher Micklatcher repeatedly characterized these communications as a "very fluid situation."  Ultimately Christopher Micklatcher received $50,000 for the sale of 20,000 shares and the return of 77, 550 shares, with a retention of the balance to cover expenses.

It is clear that the defendants obtained the proceeds from 250,000 shares of Lifeline stock without payment to anyone.  It is not clear to whom payment was due.  On the face of the transactions, those shares were owned by Christopher and Nancy Micklatcher There are references to "Bill Driscoll's" stock in the negotiations and it is apparent that animosity developed between him and the defendants which may have been the result of a loss on the 40,000 shares purchased by the Griffith Trust.

For Rosemary Driscoll to recover for the value of the 250,000 shares in Certificate No. 1135, there must be evidence of her ownership and there is none that is sufficient.  There is no record of any stock certificate in her name.  Mr. Micklatcher's reference to the expected transfer of 300,000 shares from William Driscoll in his letter to

the transfer agent is prospective and there is no evidence that it occurred or any explanation as to the 50,000 shares difference or why the shares were those of Rosemary.

Because the plaintiff has failed to prove ownership of any of the stock in Certificate No 1135, her claims are denied and it is

ORDERED, that judgment will enter for the defendants Eric A. M. Dennis and Clark C. Griffith dismissing all claims of the plaintiff Rosemary Driscoll against them and dismissing this civil action with an award of statutory costs.

DATED:   August 24th, 2011.

BY THE COURT:

s/Richard P. Matsch

_____
Richard P. Matsch, Senior Judge